IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHERRY A. WILEY, | Civ. No. 19-00195 JMS-WRP |
| Plaintiff, | ORDER (1) GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS; AND (2) DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| vs. | |
| KYNA VEA, ET AL., | |
| Defendants. | |

## ORDER (1) GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS; AND (2) DISMISSING COMPLAINT WITH LEAVE TO AMEND

## I. INTRODUCTION

On April 17, 2019, pro se Plaintiff Sherry A. Wiley filed a Complaint alleging federal and state civil and criminal claims against numerous Defendants,[1] and an Application to proceed in forma pauperis ("IFP Application"). ECF Nos. 1-2. As set forth below, the court GRANTS Plaintiff's IFP Application and

---

[1] The Complaint names the following Defendants: Cantwell Anderson, Inc. ("CAI"); CloudBreak Hawaii LLC, a CAI company, employees Kyna Vea, Property Manager, and Veronica Malabey, Assistant Property Manager; U.S. Vets, Inc. ("U.S. Vets") and U.S. Vets employees Lewis Randall Slousher, Dana Manners, and Larry Williams; Honolulu Community Action Program ("HCAP") and HCAP Barber's Point employee Alafau Muafono; the "Veteran's Administration in Hawaii," (the proper name is the United States Department of Veterans Affairs) ("VA"); the VA HUD VASH Department ("VHVD") at Tripler Army Medical Center ("TAMC") and its Program Manager, Andrew Dahlberg; Kapiolani Community College ("KCC") and KCC employees Sally Pestana, Program Director, and Carol Cummings, Phlebotomy Instructor.

DISMISSES the Complaint, with leave to amend, for failure to state a claim

pursuant to 28 U.S.C. § 1915(e)(2). Plaintiff may file an amended complaint

alleging those claims the she elects to proceed with in *this* action, on or before

August 16, 2019. She may also file other separate actions at her discretion,

alleging those claims that would be improperly joined in any amended pleading, as

explained below. This action will be dismissed if Plaintiff fails to timely file an

amended complaint that attempts to cure the deficiencies noted in this Order.

## II. <u>IFP APPLICATION</u>

Plaintiff's IFP Application indicates that she (1) is unemployed,

(2) receives $1,350 per month for "Section 8" housing and an unspecified amount

in SNAP food stamps, and (3) has assets of $122 in a bank account and $103 in

stocks. IFP Application ¶¶ 2-5. The IFP Application further indicates that

Plaintiff owes an unspecified sum for student loans that are in deferment and has

significant unspecified debt. *Id.* at ¶¶ 6, 8. Plaintiff has made the required

showing under 28 U.S.C. § 1915(a) to proceed in forma pauperis (i.e., without

prepayment of fees); therefore, the court GRANTS Plaintiff's IFP Application.

///

///

///

### III.  **BACKGROUND**[2]

Plaintiff alleges that she is an African American honorably-discharged veteran, who had an emotional support dog (until his death on January 4, 2019) pursuant to a "VA Certified Letter of Disability" for "Extreme Stress."  Compl. at 2, 24.  After moving from California to Hawaii in October 2018, Plaintiff sought to transfer her VASH voucher for housing from California to Hawaii, started volunteering at TAMC and then a VA Clinical Laboratory, and enrolled in an 8-week phlebotomy program at KCC.  *Id.* at 2, 5-6, 25.  Plaintiff's Complaint is a confusing and rambling account of alleged wrongdoing against Plaintiff both before and after she moved to Hawaii.[3]

The Complaint contains largely conclusory allegations of law and fact.  As best as the court can discern, however, Plaintiff alleges that Dahlberg discriminated against her when he refused to "port[] in" from California, a VASH

///

///

---

[2] For purposes of screening, facts alleged in the Complaint are accepted as true and construed in the light most favorable to Plaintiff.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[3] Several pages of the Complaint detail Plaintiff's disputes with the Santa Clara Housing Authority, VA, and VASH program in California, but Plaintiff does not appear to be asserting any claims arising from those disputes.  Compl. at 2-5.

voucher for a one-bedroom apartment, but instead, issued Plaintiff a voucher for a studio apartment. *Id.* at 5-6.[4]

In early December 2018, Plaintiff and her dog moved into transitional housing provided by U.S. Vets at a HCAP facility on Barber's Point. *Id.* at 8-9. While there, Plaintiff alleges that the staff and residents of the facility broke into her room, went through her clothes, stole her dog's medicine, and "stalked" her, creating a "hostile and predatory" environment. *Id.* at 9, 19-20. The Complaint alleges that Plaintiff got sick and her dog died from worms and drugs put in their food provided by U.S. Vets. *Id.* at 19-20. When Plaintiff complained about these matters both U.S. Vets and HCAP staff threatened to evict her. *Id.* at 19-21.

On February 1, 2019, Plaintiff moved into CloudBreak. *Id.* As alleged in the Complaint, over the next few months, Plaintiff had an on and off relationship with a man named Saalim that she met at CloudBreak, both her room and mailbox were broken into, clothing was moved, mail was stolen, and Malabey told residents and staff that Plaintiff was pregnant, even though Plaintiff never

---

[4] The Complaint also alleges that "Dahlberg also has filed 3 false VA Police reports against me. Whenever he saw me up at the VA from October 2017 to present, he called VA Federal Police to the area I would be at. I learned this when I contacted the VA Privacy Officer, Ms. Allison and Director Lorna Tanaka regarding my SARS report. This report lists every person on this island at VA who has accessed my VA Records without my authorization and Andrew Dahlberg and others, VA assigned computer login credential are listed several times, along with the false police report he made to the VA police." Compl. at 7.

gave Malabey that information. *Id.* at 9-14, 22-23.[5]  In addition, Plaintiff alleges

that on March 11, 2019, Hawaii Five-O film crews were at CloudBreak and some

personnel were pretending to fix air conditioners in some units. *Id.* at 16.  Plaintiff

further alleges that because of this, Vea knows that someone had entered Plaintiff's

apartment and gone through her belongings, but that Vea denied this and would not

let Plaintiff see footage from security cameras outside her unit. *Id.*

      Plaintiff alleges that during a March 30, 2019 phlebotomy class at

KCC, a blood specimen was drawn from Plaintiff. *Id.* at 14, 22.  The Complaint

alleges that Plaintiff did not give Cummings, her instructor, authorization to "have

[her] blood sampled." *Id.* at 14.  Sometime after the blood draw, Cummings

"inferred to the class that [Plaintiff] was pregnant," even though Plaintiff did not

give her such information. *Id.*  Plaintiff alleges that because "this information

---

[5] For example, the Complaint alleges that on April 1, 2019, Plaintiff ran into Saalim and Malabey at the apartment building, and that Saalim said to her "It's okay, it's okay . . . come on in, it's okay.  You can tell me, it's okay. . . . Having no idea what he's talking about and noticing that the office door is wide open which is highly unusual, I cautiously walk around his swifer mop and walk to the elevator door slowly, puzzled, and wondering what I just walked into.  The office door is wide open.  Blinds open.  [Four others] and [Malabey] are inside watching me as I walk to the elevator.  The[n] [Malabey] loudly says, "OHH, She is so low down!!  She is so low-down!!  She ain't gone even tell him she's pregnant and it's his baby!!  All the others are reacting, saying thing like I'm so wrong and ohhhh!!!  I am so wrong!!!  Getting each other upset and pumping [Malabey] up.  The[n] [Malabey] says, "That bitch!!  Now I'm full frontal, eyes directly in full contact with hers, my finger still unconsciously on the elevator button waiting for it to come and getting pissed off at [Malabey's] and their provoking actions towards me.  Then I realized and see the camera directly above the door and realize the camera is just getting my [reaction] and not theirs.  I'm being set up.  Saalim standing directly behind not saying a word nor preventing anything.  [Malabey] backs down and turns to [others] and repeat how she and Saalim are going to take this baby away from me and how I am so vile and low down for not telling him." Compl. at 13-14.

made it back to [Malabey] and Saalim[, that fact] . . . confirms [her] stalking allegations against them both and from or by . . . Cumming[s]." *Id.* Plaintiff further alleges that she is "the only black in the class room." *Id.* at 24. During one class, Cummings urgently yelled for another student to get bleach when Plaintiff's blood spilled down her arm and onto a chair, but "[w]hen this happens to the other student [Cummings] makes no fuss at all." *Id.*

On April 13, 2019, Pestana went to the class and "gave the story of the student who tried to set up her own Internship and it back fired in her face." *Id.* Plaintiff alleges that Pestana and Cummings "like to talk 'over/about' me indirectly while hinting to the class by direct eye contact and body language stare directly at me implying by actions and body language that I'm the person they're talking about. Inferences." *Id.* In April 17, 2019, the VA Lab director "ended [Plaintiff's] observation." *Id.* at 25. The VA Lab director had spoken to Pestana the day before "and inferred that [Pestana] told her that [Plaintiff] would not be completing the Phlebotomy course so that disqualified [Plaintiff] from being in the lab. *Id.*

As a result of these actions, the Complaint alleges that Plaintiff lost employment opportunities, suffered emotional distress, and was nearly murdered. *Id.* at 25-26.

Based on the foregoing, the Complaint asserts claims titled:

(1) "HIPAA Rights Violations," (2) "Personal Health Information Violation,"

(3) "Breaking in and Entering my apartment without my knowledge or consent,"

(4) "Slander," (5) "Libel," (6) "Collaborative Stalking," (7) Intimidation,"

(8) "Endangerment and Negligence," (9) "Civil Rights Violations," (10) "Hate

Crime," (11) "Medical Malpractice," (12) "Invasion of Privacy," (13) "Fostering a

Predatory and Hostile Community," (14) "Practicing Medicine without a license,"

and (15) infliction of "Emotional Distress." *Id.* at 2, 25. Plaintiff seeks $36

million from each Defendant, plus court costs and fees.[6] *Id.* at 25. The Complaint

does not allege which claims are asserted against which Defendants.

## IV. <u>STANDARDS OF REVIEW</u>

The court must screen the Complaint for each civil action commenced

pursuant to 28 U.S.C. § 1915(a), governing IFP proceedings. The court must sua

sponte dismiss a complaint or claim that is "frivolous or malicious[,] . . . fails to

state a claim on which relief may be granted[,] or . . . seeks monetary relief against

a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see*

---

[6] The Complaint specifically seeks "$36 Million dollars each, after court costs and fees and all other expenses that presents itself, those known and unknown by the duration of this case for Tort, Compensatory Damages, Punitive Damages, Injunctive Damages, Declarative Damages, Emotional Distress, HIPAA Right Law damages, Medical Mal Practice [sic] Damages, and any other damages or relief that This Supreme Court deems appropriate regarding this case." Compl. at 25. In this context and absent any further prayer for specific injunctive or declaratory relief, the court construes the Complaint as seeking only monetary damages.

*Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to sua sponte dismiss an in forma pauperis complaint that fails to state a claim).

Screening under § 1915(e)(2) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (recognizing that a complaint that fails to allege a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a plausible claim) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). However, although the court must accept as true allegations of material fact, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (citing *Iqbal*, 556 U.S. at 678). That is, conclusory statements, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," and factual allegations that only permit the court to infer "the mere possibility of misconduct" fall short of meeting the plausibility standard. *Iqbal*, 556 U.S. at 678-79; *see also*

*Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In addition, Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation . . . be simple, concise, and direct." Fed R. Civ. P. 8(a)(2), (d)(1). That is, to state a plausible claim, a plaintiff must allege a factual and legal basis for each claim, such that each defendant is provided fair notice of what each claim is and the grounds upon which each claim rests. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Twombly*, 550 U.S. at 556-57, 562-563. The court may dismiss a complaint for violation of Rule 8 if a defendant would have difficulty responding to its claims, *see Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011), even if the complaint is not "wholly without merit," *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

Plaintiff appears pro se; consequently, the court liberally construes the Complaint. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted); *see also Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam). The court must grant leave to amend if it appears that the plaintiff can correct the defects in the complaint, *Lopez*, 203 F.3d at1130, but if a claim or

complaint cannot be saved by amendment, dismissal with prejudice is appropriate, *Sylvia v. Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## V. <u>DISCUSSION</u>

### A.    Subject-Matter Jurisdiction

In general, Plaintiff may establish the court's subject matter jurisdiction in one of two ways.  First, Plaintiff may assert that Defendant violated the Constitution, a federal law, or treaty of the United States.  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Alternatively, Plaintiff may invoke the court's "diversity jurisdiction," which applies "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).

The Complaint references the violation of Plaintiff's "HIPAA Rights."[7]  Compl. at 1-2, 22.  In addition, the Complaint states that the "Constitution of the United States . . . states that ALL men have the unalienable rights to be free, to have life, liberty and the pursuit of happiness as I choose."  *Id.* at 26.  The Complaint further states that Plaintiff's "Civil Rights affords me the

---

[7] Plaintiff is likely referring to the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d, *et seq.*

opportunity to live MY LIFE free from harm, the way I CHOOSE, on my own terms without interference from anyone else.  All of these Rights and others have been taken away or altered by the defendants." *Id.* (formatting altered). Construing the Complaint liberally, Plaintiff may be attempting to assert a claim under 28 U.S.C. § 1983 for a general violation of a constitutional right, and a claim for violation of HIPAA.  So construed, there is federal question jurisdiction and therefore, the court has subject matter jurisdiction over this action.[8]  However, Plaintiff's Complaint is deficient in multiple ways.

## B.     Failure to Comply with Rule 8

First, Plaintiff's Complaint fails to comply with Rule 8.  The Complaint is neither short, nor a plain statement of Plaintiff's claims.  Rather, the Complaint is replete with allegations that are confusing, irrelevant, conclusory, and often based on conjecture and opinion.  These largely conclusory factual and legal assertions fail to provide any justification for relief.  The Complaint lists numerous causes of action, but fails to link those claims to the narrative portion of the Complaint.  For example, the Complaint fails to connect each legal claim to specific conduct by a particular Defendant.  That is, the Complaint fails to set forth

---

[8] Plaintiff failed to assert, and apparently cannot assert, the existence of diversity jurisdiction because it appears that Plaintiff and most Defendants are citizens of Hawaii.  The Complaint alleges that Plaintiff lives in Hawaii and that most Defendants work in Hawaii.

each claim along with factual allegations to support each claim as to each Defendant.

Even construed liberally, the court and Defendants must guess which claims are asserted against which Defendants and what factual allegations support each claim. Thus, the Complaint is DISMISSED for failure to comply with Rule 8. *See Cafasso*, 637 F.3d at 1059; *see also McHenry*, 84 F.3d at 1180 ("Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.").

## C.    Failure to State a Claim

Moreover, Plaintiff fails to state plausible claims. As discussed below, some Defendants are immune from suit and/or from the claims asserted, some claims lack a private cause of action, and some claims fail for lack of supporting factual allegations. The court addresses these issues in turn.

### 1.    *Claims Against the VA, the VHVD, and Dahlberg*

Plaintiff's claims against Dahlberg, in both his official and individual capacities, the VA, and the VHVD fail for numerous reasons, including sovereign immunity, lack of subject-matter jurisdiction, and/or the unavailability of a *Bivens* remedy.

Unless waived, claims against the United States, federal agencies, and federal officials in their *official* capacities are barred by sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *see also Hodge v. Dalton*, 107 F.3d 705, 707 (9th Cir. 1997) ("The doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities."). A waiver of sovereign immunity must be "unequivocally expressed," and any limitations and conditions upon the waiver "must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. at 156, 160-61 (1981) (citations omitted).

Congress has waived sovereign immunity for torts committed by federal officials in their *official* capacities, provided a plaintiff first exhaust his administrative remedies under the Federal Tort Claims Act ("FTCA").[9] *See* 28 U.S.C. § 2675; *D.L. v. Vassilev*, 858 F.3d 1242, 1244-45 (9th Cir. 2017). The exhaustion of administrative remedies requirement is jurisdictional and cannot be waived; thus, when a plaintiff has failed to exhaust administrative remedies under the FTCA, a federal court lacks subject-matter jurisdiction. *See McNeill v. United States*, 508 U.S. 106, 110 (1993); *Vassilev*, 858 F.3d at 1244.

---

[9] 28 U.S.C. §§ 1346, 2671-2680.

In addition, the Supreme Court has authorized suits for damages against federal officials in their *individual* capacities, pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  But the Supreme Court has recognized *Bivens* claims only in three contexts—FBI agents handcuffing a man in his home without a warrant in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures, a Congressman's firing of his female secretary in violation of the Fifth Amendment's Due Process Clause, and prison officials failing to treat a prisoner's asthma in violation of the Eighth Amendment's prohibition against cruel and unusual punishment—none of which applies here.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55, 1860 (2017).  Expanding a *Bivens* damages remedy to new contexts is "disfavored."  *Id.* at 1857; *see also Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018) ("[T]he [Supreme] Court has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity.") (internal citation and quotation marks omitted).  Thus, courts will not recognize a new *Bivens* remedy if there is an "'alternative, existing process for protecting' the plaintiff's interests," *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1120 (9th Cir. 2009) (quoting  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)), or where other "special factors" counsel against such expansion by the judiciary, *Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018) ("Because [plaintiff's] claims arise in a new context, we must

ask whether there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'") (quoting *Ziglar*, 137 S. Ct. at 1857). *See also Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1242-43 (9th Cir. 2019) (citing cases); *Rodriguez v. Swartz*, 899 F.3d 719, 738 (9th Cir. 2018) (explaining that courts cannot recognize a new *Bivens* remedy if there is an "adequate alternative remedy").

Moreover, the Veterans' Judicial Review Act ("VJRA"), 38 U.S.C. § 511(a), divests this court of subject-matter jurisdiction to review VA decisions that relate to benefits decisions, which includes the VASH voucher program. *See Gila River Indian Cmty. v. U.S. Dep't of Veterans Affairs*, 899 F.3d 1076, 1079-80 (9th Cir. 2018) (construing § 511(a) broadly); *see also Bluestein v. U.S. Dep't of Housing & Urban Dev.*, 2013 WL 6627965, at *3 (D.N.H. Dec. 16, 2013) (collecting cases); *Smart v. U.S. Dep't of Veteran Affairs,* 759 F. Supp. 2d 867, 872 (W.D. Tex. 2010) (holding that a claim regarding denial of VASH benefits is within the purview of the VA; thus § 511(a) divests the court of subject-matter jurisdiction).

Here, to the extent Plaintiff's claims against Dahlberg, the VA, and the VHVD arise from Dahlberg's refusal to transfer Plaintiff's VASH voucher to Hawaii, such claims are barred for lack of subject-matter jurisdiction pursuant to the VJRA. These claims are DISMISSED without leave to amend. *See Gila River*

*Indian Cmty.*, 899 F.3d at 1079-80; *Bluestein*, 2013 WL 6627965, at \*3; *Smart*, 759 F. Supp. 2d at 872.

Second, to the extent Plaintiff may be asserting a tort claim—based on other conduct—against Dahlberg in his official capacity pursuant to the FTCA, she has failed to allege exhaustion of her administrative remedies.  Thus, this court lacks subject-matter jurisdiction over such claim.  *See McNeill*, 508 U.S. at 110; *Vassilev*, 858 F.3d at 1244.  But because Plaintiff may be able to show exhaustion of administrative remedies, Plaintiff's FTCA claim is DISMISSED with leave to amend.

Third, to the extent Plaintiff may be attempting to assert a *Bivens* claim against Dahlberg in his individual capacity, the Complaint lacks sufficient factual allegations to support such claim.  That is, the Complaint neither states the legal basis for a *Bivens* claim, nor alleges what specific conduct by Dahlberg supports such claim.  Thus, on its face, the Complaint fails to allege sufficient facts to support recognition of a new *Bivens* remedy.  *See Ziglar*, 137 S. Ct. at 1858-59, 1865; *Rodriguez*, 899 F.3d at 738.  Plaintiff's claim for damages against Dahlberg in his individual capacity is DISMISSED with leave to amend.

And fourth, Plaintiff has otherwise failed to allege waiver of sovereign immunity for Plaintiff's claims against the VA, the VHVD, and Dahlberg in his official capacity.  Thus, any remaining claims against the VA,

VHVD, and Dahlberg, in his official capacity, are DISMISSED with leave to amend.

### 2. HIPAA

Plaintiff alleges claims against unspecified Defendants for "HIPAA Rights Violations." Compl. at 2. These claims fail because there is no private right of action to assert such claims. *See Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010) ("HIPAA itself provides no private right of action.") (citing *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007)). Further, in enacting HIPAA, Congress did not "create new rights enforceable under [42 U.S.C.] § 1983 . . . in clear and unambiguous terms." *Nickler v. Cty. of Clark*, 752 F. App'x 427, 429 n.1 (9th Cir. 2018) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002)). Thus, Plaintiff's HIPAA claims are DISMISSED without leave to amend.

### 3. Criminal Claims

Construed liberally, the Complaint asserts numerous state-law criminal claims based on alleged breaking and entering; harassment; stalking; intimidation; and poisoning Plaintiff's dog. But Plaintiff lacks standing to assert criminal claims. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Peters v. Roberts Markel, PC*, 2012 WL

5383394, at *3 (D. Haw. 2012) (recognizing that no private right of action to enforce a Hawaii criminal statute exists); *State v. Wilson*, 2009 WL 48141, at *28 (Haw. Ct. App. 2009) ("A criminal action is brought by the State of Hawaii, not a private citizen."). To the extent Plaintiff asserts state-law criminal claims, they are DISMISSED without leave to amend.

### 4. *Practicing Medicine Without a License*

Under Hawaii law, the practice of medicine without a license is prohibited, with specified exceptions, none of which applies to the facts asserted in the Complaint. *See* Hawaii Revised Statutes ("HRS") § 453-2. But enforcement of this law is limited to the Hawaii medical board; that is, HRS chapter 453 provides no private cause of action for violation of § 453-2. *See* HRS § 453-5.1(2) (providing that "the Hawaii medical board shall have all the powers necessary . . . to effectuate the purpose of this chapter, including . . . [t]o enforce this chapter and rules adopted pursuant thereto"). Plaintiff's claim for practicing medicine without a license is DISMISSED without leave to amend.

### 5. *Section 1983 Claims*

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege both (1) "the deprivation of a right secured by the federal Constitution or statutory law," and (2) "that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Section 1983

also requires that Plaintiff allege that she suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of her rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

The only named Defendants alleged to be state actors are KCC employees, Cummings and Pestana.[10] Liberally construed, the Complaint names Cummings and Pestana in both their official and individual capacities.

### a. *Eleventh amendment immunity*

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official

---

[10] The Complaint alleges that Defendants CAI and CloudBreak are private corporations. US Vets is "a nonprofit organization that provides services to veterans." *McAllister v. U.S. Veterans Initiative*, 2015 WL 2345595, at *1 (D. Haw. May 14, 2015). And HCAP "is a nonprofit corporation." *Rayford v. Omura*, 400 F. Supp. 2d 1223, 1226 (D. Haw. Nov. 8, 2005). Thus, these entities and their employees, Vea, Malabey, Slousher, Manners, Williams, and Muafono, are private parties.

A private party may, under limited circumstances, act under the color of state law when "he is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). The Ninth Circuit recognizes "at least four different criteria, or tests, used to identify state action: '(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999)). But under any of the four tests, "the central question remains whether the alleged infringement of federal rights [is] fairly attributable to the government." *Id.* at 1096 (internal quotations omitted).

Even liberally construed, the Complaint fails to allege any *facts* to show that any of these private parties met one of the four tests identifying state action, or is otherwise a state actor. And the remaining Defendants, the VA, the VHVD, and Dahlberg are federal, not state, actors. Therefore, to the extent Plaintiff asserts § 1983 claims against any of these Defendants, such claims fail. *See Anderson*, 451 F.3d at 1067; 42 U.S.C. § 1983.

capacities." *Aholeilei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-03 (1984). State universities and university officials sued in their official capacities are therefore entitled to Eleventh Amendment immunity from a suit for damages. *See Flint v. Dennison*, 488 F.3d 816, 825-26 (9th Cir. 2007); *Bolla v. Univ. of Haw.*, 2009 WL 10676971, at *1 (D. Haw. Oct. 8, 2009) (dismissing § 1983 claims for damages against University of Hawaii and university officials in their official capacities).

Defendants named in their official capacities are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (quoting *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ex parte Young*, 209 U.S. 123 (1908).

Plaintiff does not seek injunctive relief and her § 1983 claims for damages against KCC, which is part of the University of Hawaii system, and Cummings and Pestana, in their official capacities, are barred by the Eleventh Amendment. These claims are therefore DISMISSED without leave to amend.

##### b. *Disclosure of medical information*

Plaintiff appears to claim that Cummings' disclosure of her medical information violated HIPAA and/or constituted an invasion of privacy. As set forth above, Plaintiff cannot base a § 1983 claim on an alleged HIPAA violation, *see Nickler*, 752 F. App'x at 429 n.1, and she does not specify any other federal statute as providing an alleged right to privacy. Further, the Supreme Court has not definitively answered whether there is a constitutional right to privacy in personal information (such as medical information). *See Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 147 n.10 (2011); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457-58 (1977); *Whalen v. Roe*, 429 U.S. 589, 599 (1977).

To the extent lower courts have recognized a constitutional right to medical privacy, such right is generally limited to medical records and/or communications. *See Seaton v. Mayberg*, 610 F.3d 530, 536-37 (9th Cir. 2010) (collecting cases); *see also Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir. 1995) ("A number of cases in the lower federal courts, including our own . . . recognize a qualified constitutional right to the confidentiality of medical records and medical communications."); *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001) ("We have long recognized the right to privacy in one's medical information [such as] . . . medical records, . . . prescription records."); *United States v. McVeigh*, 918 F. Supp. 1452, 1466 (W.D. Okla. 1996) ("There may be records sealed to protect the

privacy interests of the defendants in custody, such as matters relating to physical or mental health.").

Here, the Complaint does not allege disclosure of medical records or medical communications. Nor does the Complaint allege specific facts to show that Cummings' conduct caused such disclosure. Rather, the Complaint alleges in conclusory fashion that Cummings "assumed" and "inferred" to the class that Plaintiff was pregnant by "announcing this rumor indirectly." Compl. at 14. It is not at all clear that Plaintiff's blood was actually tested, whether Plaintiff was actually pregnant, or what Cummings actually said or did. That is, even construed in a light most favorable to Plaintiff, such conclusory allegations are not facts and do not satisfy Rule 8. Moreover, absent such facts, Plaintiff necessarily fails to allege the requisite causation—that Cummings' conduct caused a disclosure of medical records or communications. Thus, Plaintiff fails to state a plausible claim for invasion of privacy against Cummings. This claim is DISMISSED with leave to amend.

c.      *Discrimination*

Plaintiff does not allege a statutory basis for her racial discrimination claims.[11] The Equal Protection Clause of the Fourteenth Amendment prohibits a

---

[11] 42 U.S.C. § 1981 does not appear to apply because the Complaint does not allege impairment of a contractual relationship on account of race. *See* 42 U.S.C. § 1981 (providing for

state from denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Its central purpose is to prevent the States from purposefully discriminating between individuals on the basis of race." *Shaw v. Reno*, 509 U.S. 630, 642 (1993). That is, the Equal Protection Clause requires that similarly situated individuals be treated alike. *See City of Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). To state an equal protection claim under § 1983, Plaintiff "must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [her] based upon membership in a protected class" such as race. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citations and quotation marks omitted); *see also New Orleans v. Dukes*, 427 U.S. 297, 303 (1975) (recognizing that race is a protected class for equal protection purposes). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation and emphasis omitted).

Plaintiff alleges that she was the only African American in the phlebotomy class and that the "20 plus graduating class portraits on the wall do not have . . . one black student." Compl. at 24. But Plaintiff fails to connect these

---

the equal rights of "[a]ll persons . . . to make and enforce contracts" without respect to race); *Domino's Pizza v. McDonald*, 546 U.S. 470, 476 (2006) ("Any claim brought under § 1981 . . . must initially identify an impaired contractual relationship under which the plaintiff has rights.") (citation and editorial marks omitted).

facts to show discriminatory intent on the part of Cummings or Pestana.  The

Complaint fails to allege that Cummings or Pestana said anything or engaged in

any conduct indicative of a discriminatory intent.  That is, the Complaint fails to

allege any facts connecting the absence of other African-American phlebotomy

students in Plaintiff's class and in prior graduating classes with Cummings'

conduct in the classroom or with Pestana's alleged comment to the VA lab director

that Plaintiff would not be completing the class.  At most, Plaintiff alleges that

Cummings yelled for bleach when Plaintiff's blood spilled onto a chair, but not

when another student's blood spilled.  But the Complaint does not provide

sufficient facts to demonstrate the similarity of these two situations.  Thus, the

facts alleged are not "susceptible of an inference of discriminatory intent."

*Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998)

(explaining that a plaintiff may state an equal protection claim by alleging "facts

that are at least susceptible of an inference of discriminatory intent").  Plaintiff's

discrimination claims against Cummings and Pestana are DISMISSED with leave

to amend.

## D.    Improper Joinder

Federal Rule of Civil Procedure 18(a) allows a plaintiff to assert

multiple claims, related or not, in one lawsuit against a single defendant.  To name

different defendants in the same lawsuit, however, a plaintiff must satisfy Rule 20,

governing joinder of parties.  Permissive joinder of multiple defendants in a single lawsuit is allowed only if (1) a "right to relief is asserted against [each defendant that] . . . aris[es] out of the same transaction, occurrence,  or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Unrelated claims that involve different defendants must be brought in separate lawsuits.  *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Coughlin v. Rogers*, 130 F.3d 1348, 1350-51 (9th Cir. 1997); *Woods v. City of L.A.*, 2017 WL 5634105, at \*5 (C.D. Cal. Nov. 22, 2017) (citing *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)); *Pitts v. Tuitama*, 2017 WL 1731681, at \*4 (D. Haw. May 2, 2017) (citing cases).  The court may sever misjoined parties as long as no substantial right is prejudiced by severance.  Fed. R. Civ. P. 21; *Coughlin*, 130 F.3d at 1350; *Evans v. Deacon*, 2016 WL 591758, at \*6 (D. Or. Feb. 12, 2016).

Here, Plaintiff's Complaint involves incidents that do not arise from the same transaction or occurrence or series of transactions or occurrences, and they clearly involve separate acts done by different individuals.  Thus, should Plaintiff choose to amend her claims, she must be sure to separate claims arising from her housing from claims arising from her phlebotomy class.

///

///

25

## E.    Leave to Amend

As set forth above, Plaintiff is granted leave to amend her Complaint by August 16, 2019, to attempt to cure the deficiencies set forth above.  However, Plaintiff may amend to allege only those claims she elects to proceed with in *this* action.  She may also file other separate actions at her discretion, alleging those claims that would be improperly joined in an amended pleading, as explained above.  For example, if Plaintiff chooses to amend her § 1983 claims against Cummings and Pestana, she may not include any claims against other Defendants not arising from the same transaction or occurrence as her claims against Cummings and Pestana.

If Plaintiff intends to assert a § 1983 claim against one or more Defendants, she must name each person and entity as a separate defendant and write short, plain statements telling the court:  (1) the constitutional or statutory right Plaintiff believes was violated; (2) the specific basis of this court's jurisdiction; (3) the name of the defendant who violated that right; (4) exactly what that defendant did or failed to do; (5) how the action or inaction of that defendant is connected to the violation of Plaintiff's rights; and (6) what specific injury Plaintiff suffered because of that defendant's conduct.  Plaintiff must repeat this process for each person or entity that she names as a defendant.  If Plaintiff fails to affirmatively link the conduct of each named defendant with the specific injury she

suffered, the allegation against that defendant may be dismissed for failure to state a claim.

An amended complaint generally supersedes a prior complaint and must be complete in itself without reference to the prior pleading. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc). Claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey*, 693 F.3d at 928 (stating that claims dismissed with prejudice need not be repled in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not repled).

The amended complaint must state that it is the "First Amended Complaint," and it may not incorporate any part of the original Complaint by reference, but rather, any specific allegations must be retyped or rewritten in their entirety. Plaintiff may include only one claim per count. Any cause of action that is not raised in the First Amended Complaint is waived. *See id.* Failure to file an amended complaint by August 16, 2019 will result in automatic dismissal of this action.

///

///

**F.      Supplemental Jurisdiction Over State-Law Claims**

Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over [state-law claims] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"  Because the Complaint fails to allege any basis for diversity jurisdiction, and the dismissed federal-law claims provide the only other basis for federal subject-matter jurisdiction, to the extent Plaintiff asserts additional state-law claims, the court does not address them.

If Plaintiff does not file an amended complaint, the court will decline jurisdiction over state-law claims pursuant to § 1367(c) and dismiss them without prejudice.  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point towards declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

If Plaintiff files an amended complaint that states a cognizable federal claim against a Defendant, however, the court will retain jurisdiction over related state-law claims included in the amended complaint and address them at that time.

## VI. CONCLUSION

Based on the foregoing:

(1) Plaintiff's IFP Application is GRANTED;

(2) Plaintiff's Complaint is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2);

(3) the following claims are DISMISSED without leave to amend: Plaintiff's claims arising from the denial of VA benefits, including the VASH voucher; HIPAA, criminal, and practicing medicine without a license claims; and § 1983 claims against KCC and Cummings and Pestana in their official capacities;

(4) the following claims are DISMISSED with leave to amend: Plaintiff's non-VJRA claims against the VA and VHDH, FTCA and non-VJRA claims against Dahlberg in his official capacity, and *Bivens* claims against Dahlberg in his individual capacity; and § 1983 claims against Cummings and Pestana in their individual capacities; and

(5) Claims against Dahlberg, the VA, and/or the VHDH must be asserted in a separate lawsuit from claims asserted against Cummings and Pestana.

Plaintiff is GRANTED leave to file an amended complaint, as permitted by this Order, on or before August 16, 2019. Failure to file an amended complaint by August 16, 2019 will result in automatic dismissal of this action without prejudice.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 17, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Wiley v. Vea, et al.*, Civ. No. 19-00195 JMS-WRP, Order (1) Granting Application to Proceed In Forma Pauperis; and (2) Dismissing Complaint With Leave to Amend

30