IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHERRY A. WILEY,<br><br>               Plaintiff,<br><br>   vs.<br><br>KYNA VEA, et al.,<br><br>               Defendants. | Civ. No. 19-00195 JMS-WRP<br><br>ORDER DISMISSING FIRST<br>AMENDED COMPLAINT WITH<br>LEAVE TO AMEND |

## ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND

## I. INTRODUCTION

On April 17, 2019, pro se Plaintiff Sherry A. Wiley ("Plaintiff") filed a Complaint and an Application to proceed in forma pauperis ("IFP Application"). ECF Nos. 1-2. On July 17, 2019, the court granted the IFP Application and dismissed the Complaint, with leave to amend, for failure to state a claim. ECF No. 6. On October 18, 2019, Plaintiff filed an untitled document that appears to be an amended complaint against numerous Defendants.[1] ECF No. 9. On November

---

[1] The amended complaint names the following Defendants:

(a) the "Veteran's Administration Honolulu, Hawaii" (the proper name for the Veteran's Administration is the United States Department of Veterans Affairs "VA") ("VA Hawaii"); VA Hawaii employees Andrew Dahlberg, Program Manager of VA HUD Veterans Affairs

(continued . . . )

14, 2019, Plaintiff filed a "Motion for U.S. District Court to Accept Mailing

Address for Defendants" ("November 14 Motion") in an apparent effort to add to

the amended complaint allegations and mailing addresses for Defendants. ECF

---

Supportive Housing ("VASH") ("Dahlberg"); Rachel Roche, VA HUD VASH ("Roche"); Dr. David Bernstein, Director of Mental Health/HUD VASH ("Bernstein"); Dr. Celia, Assistant Director of Mental Health/HUD VASH ("Celia"); Jennifer Gutowski, Director of VA Pacific Honolulu, Hawaii ("Gutowski"); Steven Price, Director of Human Resources ("Price"); Jackie Nuygen, Employment Specialist ("Nugyen"); Lao Loial, Director of the VA Laboratory, 2nd floor ("Loial"); Schoen Safotu, Director for VA Volunteers ("Safotu"); the Vet Center and Cameron Apostle-Chinn, Vet Center Counseling Pyschologist ("Apostle-Chinn") (collectively, the "VA Hawaii Defendants");

(b) the "Veteran's Administration Palo Alto/San Jose, CA" ("VA California"); Mona Bazzi, Program Director of HUD VASH; ("Bazzi"); Rhonda Staton, Supervisor of HUD VASH ("Staton"); Christina Savage, Case Worker ("Savage"); Thang D. Ho, Case Worker ("Ho"); Steven Gun, Case Worker ("Gun"); Danica Bogicevic, VA OIG Vision 21, West Coast Regional Homeless Program Director ("Bogicevic"); Maxine Pulliam, West Coast Regional Director, Supportive Services for Vet. Families ("SSVF") ("Pulliam"); and Jill Albanese, VA Central States Director for SSVF ("Albanese"); (collectively, the "VA California Defendants"); (collectively with the VA Hawaii Defendants, the "VA Defendants");

(c) U.S. Vets Headquarters and U.S. Vets Barber's Point, Hawaii (collectively, "U.S. Vets"); U.S. Vets employees Larry Williams, Regional Director of Program Services ("Williams"); Dana Manners, Barber's Point Program Manager ("Manners"); Jamie Henry, Barber's Point COO ("Henry"); Lewis Randall Slusher, After Care Case Manager ("Slusher"); Shawna, Supervisor of all Case Managers; Julia Radcliff, Case Worker ("Radcliff"), Duke, Housing Search Specialist; Adam, Housing Search Specialist; GiGi, Housing Search Specialist; Carla Hamler, Supervisor for SSVF Case Managers ("Hamler"); Senade L., Director of SSVF Funding ("Senade"); and Mark Duffy, Case Manager for SSVF Funding ("Duffy"); (collectively, the "U.S. Vets Defendants");

(d) Honolulu Community Action Program Barber's Point ("HCAP"); HCAP employees Alafau Maustuf, Manager ("Maustuf"), Pol, Resident Manager; Buzzie, Resident Manager; Dana, Resident Manager; and Mel, Resident Manager; (collectively, the "HCAP Defendants"); and

(e) CloudBreak Hawaii ("Cloudbreak"); Cloudbreak employees Kyna Vea, Director of Cloudbreak Hawaii ("Vea"); Veronica E. Malabey, Assistant Manager ("Malabey"); Jessica Romena, Office Specialist ("Romena"); and Bobby, Security and U.S. Vets Peer Specialist; (collectively, the "Cloudbreak Defendants") (collectively with all of the above, "Defendants").

No. 10.  On December 16, 2019, Plaintiff filed a "Motion and Plea, for a 90 [Day] Continuance, Based on Defendance [sic] Influence to Others in Alabama to Delay, Deny and Hinder Resources in Alabama; Slander and Interference With My Relocation, and Influence and Interferance [sic] to Deny Resources for Employment and Housing" (the "December 16 Motion").  ECF No. 11.

On December 20, 2019, this court issued a minute order granting the November 14 Motion.  ECF No. 12.  The court ruled that it would "construe[] the November 14 Motion and the Amended Complaint together as a First Amended Complaint ("FAC")."  *Id.*  In addition, the court STRUCK the December 16 Motion without prejudice to refiling an appropriate motion after the court screens the FAC.  *Id.*

After screening, and for the reasons discussed below, the FAC is DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim.  Plaintiff is GRANTED leave to file a second amended complaint by March 20, 2020 as limited by this Order.

///

///

///

///

///

## II. **BACKGROUND**[2]

**A.     The Complaint**

Plaintiff's original Complaint was a confusing and rambling account of alleged wrongdoing against Plaintiff both before and after she moved from California to Hawaii.  ECF No. 1.  Plaintiff alleged, in part, that she is an African American honorably-discharged veteran, who had an emotional support dog until his death on January 4, 2019.  *Id.* at PageID #2, 25.  After moving from California to Hawaii in October 2018, Plaintiff sought to transfer her VASH voucher for housing from California to Hawaii, started volunteering at Tripler Army Medical Center ("TAMC") and then at a VA Clinical Laboratory, and enrolled in an 8-week phlebotomy program at Kapiolani Community College ("KCC").  *Id.* at PageID #2, 5-6, 25.  The Complaint alleged that VA employee Dahlberg discriminated against her by refusing to "port[] in" from California a VASH voucher for a one-bedroom apartment, but instead, issued Plaintiff a voucher for a studio apartment.  *Id.* at PageID #5-6.[3]

---

[2] For purposes of screening, facts alleged in the pleadings are accepted as true and construed in the light most favorable to Plaintiff.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[3] The Complaint also alleged that

>Dahlberg . . . has filed 3 false VA Police reports against me.
>Whenever he saw me up at the VA from October 2017 to present,

(continued . . . )

In early December 2018, Plaintiff and her dog moved into transitional housing provided by U.S. Vets at a HCAP facility on Barber's Point. *Id.* at PageID #8-9. Plaintiff alleged that while she lived there, the staff and residents of the facility broke into her room, went through her clothes, stole her dog's medicine, and "stalked" her, creating a "hostile and predatory" environment. *Id.* at PageID #9, 19-20. The Complaint alleged that Plaintiff got sick and her dog died from worms and drugs put in their food provided by U.S. Vets, and when she complained about these matters, both U.S. Vets and HCAP staff threatened to evict her. *Id.* at PageID #19-21.

On February 1, 2019, Plaintiff moved into CloudBreak. *Id.* As alleged in the Complaint, over the next few months, Plaintiff had an on and off relationship with a man named Saalim that she met at CloudBreak, both her room and mailbox were broken into, clothing was moved, mail was stolen, and Malabey told residents and staff that Plaintiff was pregnant, even though Plaintiff never gave Malabey that information. *Id.* at PageID #9-14, 22-23. In addition, Plaintiff

---

he called VA Federal Police to the area I would be at. I learned this when I contacted the VA Privacy Officer, Ms. Allison and Director Lorna Tanaka regarding my SARS report. This report lists every person on this island at VA who has accessed my VA Records without my authorization and Andrew Dahlberg and others, VA assigned computer login credential are listed several times, along with the false police report he made to the VA police.

ECF No. 1 at PageID #7.

alleged that Vea knew that someone had entered Plaintiff's apartment and went

through her belongings, but that Vea denied this and would not let Plaintiff see

footage from security cameras outside her unit. *Id.* at PageID #16.

The Complaint alleged that Plaintiff's KCC phlebotomy instructor

discriminated against her during class and the KCC phlebotomy program director

discriminated by speaking to the VA Lab Director, which resulted in the Lab

Director rescinding an offer to Plaintiff of a phlebotomy internship. *Id.* at PageID

#14, 22, 24-25.

As a result of these actions, the Complaint alleges that Plaintiff lost

employment opportunities, suffered emotional distress, and was nearly murdered.

*Id.* at PageID #25-26.

The Complaint asserted claims titled: (1) "HIPAA Rights

Violations,"[4] (2) "Personal Health Information Violation," (3) "Breaking in and

Entering my apartment without my knowledge or consent," (4) "Slander,"

(5) "Libel," (6) "Collaborative Stalking," (7) "Intimidation," (8) "Endangerment

and Negligence," (9) "Civil Rights Violations," (10) "Hate Crime," (11) "Medical

Malpractice," (12) "Invasion of Privacy," (13) "Fostering a Predatory and Hostile

---

[4] Plaintiff was likely referring to the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d, *et seq.*

Community," (14) "Practicing Medicine without a license," and (15) infliction of "Emotional Distress." *Id.* at PageID #2, 25. Plaintiff sought damages of $36 million from each Defendant. *Id.* at PageID #25.

## B.    The July 17 Order

On July 17, 2019, this court dismissed the Complaint pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim (the "July 17 Order"). ECF No. 6. More specifically, the court determined that Plaintiff's Complaint failed to comply with Federal Rule of Civil Procedure 8 in that it was:

> replete with allegations that are confusing, irrelevant, conclusory, and often based on conjecture and opinion. These largely conclusory factual and legal assertions fail to provide any justification for relief. The Complaint lists numerous causes of action, but fails to link those claims to the narrative portion of the Complaint. For example, the Complaint fails to connect each legal claim to the specific conduct by a particular Defendant.

ECF No. 6 at PageID #42.

Further, the July 17 Order discussed the Complaint's deficiencies as to specific claims and granted leave to amend only those claims that could possibly be cured by amendment. Thus, the July 17 Order dismissed *without* leave to amend: claims arising from the denial of VA benefits, including the VASH voucher; claims for violation of HIPAA; criminal claims; claims for practicing medicine without a license; and claims asserted pursuant to 42 U.S.C. § 1983 against KCC and KCC employees in their official capacities. *Id.* at PageID #60.

The following claims were dismissed *with* leave to amend: claims against the VA and VA HUD VASH Department that do not arise from the denial of VA benefits; claims pursuant to the Federal Tort Claim Act ("FTCA") and claims not arising from the denial of VA benefits asserted against Dahlberg in his official capacity; *Bivens* claims against Dahlberg in his individual capacity; and § 1983 claims against KCC employees in their individual capacities. *Id.* The July 17 Order also determined that the Complaint included claims that were impermissibly joined, and instructed Plaintiff (if she chose to amend) to assert claims against Dahlberg, the VA, and/or VA HUD VASH in a separate lawsuit from claims asserted against the KCC employees. *Id.* And the court declined to address Plaintiff's state-law claims pending the filing of an amended complaint that successfully asserts federal subject matter jurisdiction. *Id.* at PageID #59-60.

## C.     Plaintiff's Relocation to Alabama

On August 14, 2019, Plaintiff filed a motion for an extension of time to file an amended complaint. ECF No. 7. Plaintiff explained that she relocated to Alabama on July 30, 2019 and was experiencing hardship in connection with her move. *Id.* at PageID #62. The court granted Plaintiff's motion and Plaintiff timely filed her FAC on October 18, 2019. ECF Nos. 8, 9.

///

///

## D.     The FAC

In the FAC, Plaintiff again asserts a rambling narrative of largely conclusory allegations of wrongdoing by many of the Defendants originally named in the Complaint, as well as against the VA California and numerous additional individual employees of all named entities.  The FAC essentially alleges that Defendants conspired to put false information about Plaintiff's mental health in her VA records, shared such information publicly, that those in positions of authority ignored her complaints and failed to take action to correct Plaintiff's records and/or discipline employees, and that disclosure of the false mental health information caused a domino effect whereby Plaintiff was denied various benefits and services including housing and employment in Hawaii, and more recently, in Alabama.  *See* ECF No. 9 at PageID #67-86.[5]

---

[5] For example, Plaintiff alleges that:

(1) the "VA stole my identify, and my VA HIPAA Rights through VA's databases and by employees, who published and violated my rights without my consent.  These published false police reports made by Andrew Dahlberg, all became public information, and used as examples during my classroom instruction by my teachers who one says she used to work for the VA," ECF No. 9 at PageID #68;

(2) "VA employees . . . abused and or had knowledge of abuse pertaining to 'Disclosure of medical information concerning Veterans Administration hospital patient,' 38 U.S.C. § 3301(e, f), (f)(2), knowing the information they were publishing was a lie, not my record and fraudulent.  This fraudulent practice carried over and influenced IHS (Institute for Human Services), Catholic Charities, every temporary employment agency I applied to and the few I worked for on the Island of Oahu, the Honolulu Police Dept., District Court, Federal Law Library and every store,

(continued . . . )

The FAC asserts claims titled: (1) HIPAA Right Violation,"

(2) "Personal Health Information Violation," (3) "Fostering a Predatory and

Hostile Environment," (4) "Identity Theft," (5) "Slander," (6) "Libel," (7) "Hate

Crime," (8) "Invasion of Privacy," (9) "Breaking in and Entering,"

---

facility, company I went into on the island of Oahu.

Now that same lie has followed me here to Alabama, the VA here in Alabama, and the Jefferson State University Police department here in Alabama where I'm attending classes. My classes are being monitored by Jefferson State University administration and police dept. When I walk to the other buildings, get out of class, there is police officer coming in the door about 3-5 minutes behind me informing staff of my presence. This is the same harassment I received in Oahu," *id.* at PageID #69;

(3) "[Gutowski] and her staff, Kia Moore, Administrative Assistant, ignored my attempts to correct the problems that Andrew Dahlberg created . . . [they] then directed me to 2 patient advocates who did nothing but mocked me. They stole my identity by inputting derrogatory (sic) information into their database and by not pursuing my cause for a solution against Andrew Dahlberg and other VA employees," *id.* at PageID #70;

(4) "I contacted Dr. Bernstein, . . . Steven Price, . . . [and] Dr. Celia, . . . [but] [n]one of the above did anything to Andrew Dahlberg," *id.*; and

(5) "U.S. Vets, VA, VA HUD VASH Office and Andrew Dahlberg are the main conspirators in this court case and the defendants listed all played a part in manipulating me. Initially not affording me the opportunity to receive their services they provide to veterans delaying me getting settled in Hawaii when I arrived in October 2017. Conspired and manipulated me securing gainful employment to support myself and be self-sufficient. Abused their authority, has knowingly, openly allowed my HIPAA Rights to be Violate; knowingly and openly fostered an environment of hostility whether at VA, in my neighborhood and on the Island of Oahu because of the published lies of false mental health diagnosis and false VA Police reports that never happened, whose elected Senior staff negligence and 'Failure to Act' have [severely] affected my ability to become gainfully employed, seek eligible civilian or veteran resources, to be safely housed, and have any quality of life in Hawaii and now in Alabama since this VA HUD VASH Office and present and former employees of the VA have decided to pull by VA records without my consent or authorization," *id.* at PageID #85-86.

(10) "Harassment," (11) "Intimidation," (12) "Medical Malpractice," (13) "Failure to Act," (14) "Gross Negligence and Endangerment," (15) "Arbitrary and Capricious Negligence," (16) "Civil Rights Violation," and (17) "Practicing Medicine Without a License[]/Medical Malpractice." *Id.* at PageID #65. The FAC does not specify the relief sought; rather, it asks the court to "revert back to . . . the original complaint . . . [and] hold every single [Defendant] accountable to the full extent of the law." *Id.* at PageID #86-87. The original Complaint sought damages of $36 million from each Defendant. ECF No. 1 at PageID #25.

### III. <u>STANDARDS OF REVIEW</u>

The court must screen the pleading for each civil action commenced pursuant to 28 U.S.C. § 1915(a), governing IFP proceedings. The court must sua sponte dismiss a complaint or claim that is "frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to sua sponte dismiss an in forma pauperis complaint that fails to state a claim).

Screening under § 1915(e)(2) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Under Rule 12(b)(6), a complaint must "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (recognizing that a complaint that fails to allege a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a plausible claim) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  However, although the court must accept as true allegations of material fact, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (citing *Iqbal*, 556 U.S. at 678).  That is, conclusory statements, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," and factual allegations that only permit the court to infer "the mere possibility of misconduct" fall short of meeting the plausibility standard.  *Iqbal*, 556 U.S. at 678-79; *see also Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In addition, Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation . . . be simple, concise, and direct."  Fed R. Civ. P. 8(a)(2), (d)(1).  That is, to state a plausible claim, a plaintiff must allege a factual and legal basis for each claim, such that each defendant is

provided fair notice of what each claim is and the grounds upon which each claim rests.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Twombly*, 550 U.S. at 556-57, 562-563.  The court may dismiss a complaint for violation of Rule 8 if a defendant would have difficulty responding to its claims, *see Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011), even if the complaint is not "wholly without merit," *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

Plaintiff appears pro se; consequently, the court liberally construes the FAC.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted); *see also Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam).  The court must grant leave to amend if it appears that the plaintiff can correct the defects in the complaint, *Lopez*, 203 F.3d at1130, but if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate, *Sylvia v. Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## IV. <u>DISCUSSION</u>

### A.    Subject-Matter Jurisdiction

In general, Plaintiff may establish the court's subject matter jurisdiction in one of two ways.  First, Plaintiff may assert that Defendants violated the Constitution, a federal law, or treaty of the United States.  *See* 28 U.S.C.

§ 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Alternatively, Plaintiff may invoke the court's "diversity jurisdiction," which applies "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

Here, the FAC alleges violation of federal law.[6] For example, it includes tort claims against the VA Defendants in their official capacities pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680.

However, as discussed below, the FAC is deficient for multiple reasons.

---

[6] Plaintiff failed to assert, and apparently cannot assert, the existence of diversity jurisdiction because it appears that when Plaintiff filed her original Complaint, Plaintiff and most Defendants named in that original Complaint were citizens of Hawaii. That is, the Complaint alleged that Plaintiff lived in Hawaii and that most Defendants work in Hawaii. Diversity jurisdiction depends on the "state of things" when the initial pleading was filed. *See, e.g.*, *Grupo Dataflux v. Atlas Global Grp., LP*, 541 U.S. 567, 574-75 (2004); *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). Thus, even though Plaintiff is now a citizen of Alabama, as to those Defendants originally named in the Complaint and renamed as Defendants in the FAC, they are not diverse. Further, although Plaintiff and those Defendants that are newly-named in the FAC may be diverse, *see, e.g.*, *Drevaleva v. Alameda Health Sys.*, 2017 WL 2462395, at *5 (N.D. Cal. June 7, 2017) ("With respect to [defendants] that the plaintiff has added in her amended complaint, diversity jurisdiction depends on the facts as they stood when the *amended* complaint was filed."), diversity jurisdiction requires "complete diversity," *see, e.g.*, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (explaining that complete diversity of citizenship is required under 28 U.S.C. § 1332(a), which "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant").

**B.      Failure to Comply with the July 17 Order**

First, the FAC improperly reasserts claims that were dismissed without leave to amend—claims arising from the denial of VA benefits, including the VASH voucher; and HIPAA, criminal, and practicing medicine without a license claims.  Thus, for the same reasons they were dismissed with prejudice in the July 17 Order, these claims are again DISMISSED with prejudice, that is, without leave to amend.

**C.      Failure to Comply with Rule 8**

Second, the FAC fails to comply with Rule 8.  Like the Complaint, the FAC is neither short, nor a plain statement of Plaintiff's claims.  Rather, Plaintiff again sets forth allegations that are confusing, irrelevant, conclusory, and largely based on conjecture and opinion.  These mostly conclusory factual and legal assertions fail to provide any justification for relief.  That is, the FAC fails to set forth each claim separately along with *factual* allegations to support that claim as to each Defendant.  Rather, Plaintiff asserts lengthy narratives replete with conclusory allegations concerning some individuals and some groups of Defendants and then references multiple claims.

Even construed liberally, the court and Defendants must guess which specific claims are asserted against each Defendant and what *factual* allegations support each claim.  Thus, the FAC is DISMISSED for failure to comply with Rule

8.  *See Cafasso*, 637 F.3d at 1059; *see also McHenry*, 84 F.3d at 1180 ("Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.").

## D.    Failure to State a Claim

Third, Plaintiff fails to state a plausible federal claim.

### 1.    *Claim for Violation of 38 U.S.C. § 5701*[7]

Section 5701 explains that records pertaining to any claim for veterans benefits "shall be confidential and privileged" and governs the disclosure of these records by the Department of Veterans Affairs.  38 U.S.C. § 5701.  To the extent Plaintiff asserts a claim for violation of § 5701, it fails because there is no private right of action to assert such claim.  *See Holliday v. Newington Police Dept.*, 2020 WL 509696, at *6 (D. Conn. Jan. 31, 2020) (finding no express or implied private right of action for violation of § 5701); *Morris v. Nicholson*, 2007 WL 2905346, at *3 (M.D. Tenn. Sept. 26, 2007) (holding that there is no private right of action for an individual harmed by § 5701 and/or 38 U.S.C. § 7332 (governing

---

[7] The FAC references "'Disclosure of medical information concerning Veterans Administration hospital patient,' 38 U.S.C. § 3301(e) & (f)(2)."  ECF No. 9 at PageID #69.  Section 3301, however, sets forth various definitions and does not contain subsections (e) and (f).  But 38 U.S.C. § 5701 does pertain to the confidentiality of VA records.  Thus, the court construes the FAC as asserting a claim for violation of § 5701(e) and (f), which discuss the circumstances under which the Secretary may release veterans' confidential information.

confidentiality and disclosure by the VA of medical records)); *Tilley v. Weiser*, 2006 WL 1084270, at *3 (E.D. Cal. Apr. 25, 2006) (holding that § 5701 does not establish a cause of action for the wrongful release of medical records).

Thus, Plaintiff's claim for violation of 38 U.S.C. § 5701 is DISMISSED without leave to amend.

### 2. *Claims Against the VA Defendants*

Plaintiff's claims against the VA Hawaii, VA California, and VA employees in their official and individual capacities fail for several reasons including sovereign immunity, lack of subject-matter jurisdiction, and/or the unavailability of a *Bivens* remedy.

### a. *Claims against the VA and official-capacity VA Defendants*

Unless waived, claims against the United States, federal agencies, and federal officials in their *official* capacities are barred by sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *see also Hodge v. Dalton*, 107 F.3d 705, 707 (9th Cir. 1997) ("The doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities."). A waiver of sovereign immunity must be "unequivocally expressed," and any limitations and conditions upon the waiver "must be strictly observed and

exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (citations omitted).

Congress has waived sovereign immunity for certain torts committed by federal officials in their *official* capacities, provided a plaintiff first exhaust administrative remedies under the FTCA. *See* 28 U.S.C. § 2675; *D.L. v. Vassilev*, 858 F.3d 1242, 1244-45 (9th Cir. 2017). The exhaustion of administrative remedies requirement is jurisdictional and cannot be waived; thus, when a plaintiff has failed to exhaust administrative remedies under the FTCA, a federal court lacks subject-matter jurisdiction. *See McNeill v. United States*, 508 U.S. 106, 110 (1993); *Vassilev*, 858 F.3d at 1244.

Here, to the extent Plaintiff may be asserting tort claims—based on conduct not arising from the denial of VA benefits—against the VA Defendants in their official capacities pursuant to the FTCA, such claims fail. First, the FTCA explicitly retains the United States' sovereign immunity for claims "arising out of . . . libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h).[8] Plaintiff's claims against the VA Defendants for libel and slander are barred by sovereign immunity and are therefore DISMISSED without leave to amend.

---

[8] An FTCA claim may only be brought against the United States itself and the FAC does not name the United States as a Defendant. If Plaintiff chooses to file an amended complaint alleging an FTCA violation, she must name the correct Defendant.

Second, with respect to any other tort claim, Plaintiff has failed to allege exhaustion of her administrative remedies. To establish exhaustion of administrative remedies, the FTCA requires that a claimant "shall have first presented the claim to the appropriate Federal agency and [her] claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). An agency's failure to "make final disposition of a claim within six months" is "deemed a final denial" for purposes of exhaustion. *Id.* The FAC does not allege that Plaintiff presented a claim for money damages to the VA. Rather, at most, it alleges that Plaintiff "inform[ed]" various VA officials of wrongdoing and submitted "a formal complaint" against Nuygent and Dahlberg to Dr. Celia. ECF No. 9 at PageID #69-70, 74. Such allegations do not sufficiently allege that Plaintiff filed a proper administrative claim with the VA. *See* 28 C.F.R. § 14.2(a) (specifying that a proper administrative claim must include "notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property [or] personal injury . . . alleged to have occurred by reason of the incident"). Nor does Plaintiff allege the date that she submitted her "formal complaint" or that she received a final agency decision. Thus, this court lacks subject-matter jurisdiction over such claims. *See McNeill*, 508 U.S. at 110; *Vassilev*, 858 F.3d at 1244.

But given Plaintiff's allegation that she submitted a formal complaint, the court cannot say with certainty that she did *not* exhaust her FTCA administrative remedies. Thus, Plaintiff's FTCA claims against the VA Defendants in their official capacities are DISMISSED with leave to amend. If Plaintiff chooses to amend her FTCA claims, she must name the United States as the Defendant, *and* she must allege facts showing that she submitted to the VA notification of each incident forming the basis of each claim for specific monetary damages for loss of property or personal injury caused by each incident. Plaintiff must allege the date she submitted each claim, to whom she submitted each claim, and any response received from the VA. If Plaintiff received an initial denial of a claim, she must also allege facts showing that she appealed such denial, the date of such appeal, and any further response from the VA.

As to all other claims against the VA and VA employees in their official capacities, the FAC fails to allege waiver of sovereign immunity. And again, because Plaintiff was granted leave to amend to allege such waiver before, it appears that granting further leave would be futile. Thus, all remaining claims against the VA and VA Defendants in their official capacities are DISMISSED without leave to amend.

### b. Claims against the individual-capacity VA Defendants

The Supreme Court has authorized suits for damages against federal

officials in their *individual* capacities pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). But the Supreme Court has recognized *Bivens* claims only in three contexts—FBI agents handcuffing a man in his home without a warrant in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures, a Congressman's firing of his female secretary in violation of the Fifth Amendment's Due Process Clause, and prison officials failing to treat a prisoner's asthma in violation of the Eighth Amendment's prohibition against cruel and unusual punishment—none of which applies here. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55, 1860 (2017). Expanding a *Bivens* damages remedy to new contexts is "disfavored." *Id.* at 1857; *see also Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018) ("[T]he [Supreme] Court has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity.") (internal citation and quotation marks omitted). Thus, courts will not recognize a new *Bivens* remedy if there is an "'alternative, existing process for protecting' the plaintiff's interests," *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1120 (9th Cir. 2009) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)), or where other "special factors" counsel against such expansion by the judiciary, *Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018) ("Because [plaintiff's] claims arise in a new context, we must ask whether there are 'special factors counselling hesitation in the absence of affirmative action by

Congress.'") (quoting *Ziglar*, 137 S. Ct. at 1857).  *See also Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1242-43 (9th Cir. 2019) (citing cases); *Rodriguez v. Swartz*, 899 F.3d 719, 738 (9th Cir. 2018) (explaining that courts cannot recognize a new *Bivens* remedy if there is an "adequate alternative remedy").

Here, to the extent Plaintiff may be attempting to assert a *Bivens* claim against VA employees in their individual capacities, the FAC lacks sufficient *factual* allegations to support such claim.  That is, the FAC neither states the legal basis for a *Bivens* claim, nor alleges what specific conduct by each VA employee supports such claim.  Thus, on its face, the FAC fails to allege sufficient facts to support recognition of a new *Bivens* remedy.  *See Ziglar*, 137 S. Ct. at 1858-59, 1865; *Rodriguez*, 899 F.3d at 738.  Given the court's prior guidance on the need to allege *facts* to support a new *Bivens* remedy, it appears that granting further leave to amend would be futile.  Thus, Plaintiff's claim for damages against the VA Defendants in their individual capacities is DISMISSED without leave to amend.

### 3.  *Claims Against the Remaining Defendants*

The FAC does not assert any federal claims against the remaining Defendants.  To the extent Plaintiff may be attempting to assert a claim under 42 U.S.C. § 1983 for violation of federal law, such claim fails for failure to allege that any remaining Defendant is a state actor.  To state a cognizable § 1983 claim, Plaintiff must allege both (1) "the deprivation of a right secured by the federal

Constitution or statutory law," and (2) "that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Here, none of the Defendants is alleged to be a state actor. And as this court explained in the July 17 Order, U.S. Vets and HCAP are non-profit organizations, and CloudBreak Hawaii LLC is a private corporation. *See* ECF No. 6 at PageID #50 (citations omitted). Thus, these entities and their employees are private parties. A private party may, under limited circumstances, act under the color of state law when "he is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). The Ninth Circuit recognizes "at least four different criteria, or tests, used to identify state action: '(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999)). But under any of the four tests, "the central question remains whether the alleged infringement of federal rights [is] fairly attributable to the government." *Id.* at 1096 (internal quotations omitted).

Even liberally construed, the FAC fails to allege any *facts* to show that any of these private parties met one of the four tests identifying state action, or is otherwise a state actor. And the VA Defendants are federal, not state, actors.

Therefore, to the extent Plaintiff asserts § 1983 claims, such claims fail, and are DISMISSED. *See Anderson*, 451 F.3d at 1067. Because Plaintiff was granted an opportunity to amend to allege a cognizable § 1983 claim, and no named Defendant is a state actor, granting further leave to amend would be futile. Thus, Plaintiff's § 1983 claims are DISMISSED without leave to amend.

## E. Leave to Amend

As set forth above, Plaintiff is granted leave to amend by March 20, 2020, to assert a cognizable FTCA claim against the United States based on conduct by the VA Defendants in their official capacities, and to reassert her state-law claims. Plaintiff may not amend any other federal claim or name any new Defendant.

An amended complaint generally supersedes a prior complaint and must be complete in itself without reference to the prior pleading. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc). Claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey*, 693 F.3d at 928 (stating that claims dismissed with prejudice need not be repled in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not repled).

The amended complaint must state that it is the "Second Amended Complaint," and it may not incorporate any part of the original Complaint or FAC by reference, but rather, any specific allegations must be retyped or rewritten in their entirety. Plaintiff may include only one claim per count. Any cause of action that is not dismissed without leave to amend that is not raised in the Second Amended Complaint is waived. *See id.* That is, to avoid waiver, Plaintiff must reallege all state-law claims. Failure to file a second amended complaint by March 20, 2020 will result in automatic dismissal of this action.

## F.    Supplemental Jurisdiction Over State-Law Claims

Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over [state-law claims] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"  Because the FAC fails to allege any basis for diversity jurisdiction, and the dismissed federal-law claims provide the only other basis for federal subject-matter jurisdiction, to the extent Plaintiff asserts state-law claims, the court does not address them.

If Plaintiff does not file an amended complaint, the court will decline jurisdiction over state-law claims pursuant to § 1367(c) and dismiss them without prejudice. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the

values of judicial economy, convenience, fairness, and comity.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point towards declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

If Plaintiff files a second amended complaint that states a cognizable FTCA claim, however, the court will retain jurisdiction over related state-law claims included in the amended complaint and address them at that time.

## V. <u>CONCLUSION</u>

Based on the foregoing:

(1) Plaintiff's FAC is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2);

(2) the following claims are DISMISSED without leave to amend: Plaintiff's claims arising from the denial of VA benefits, including the VASH voucher; claims for violation of 38 U.S.C. § 5701 and HIPAA; all claims against the VA Defendants except FTCA claims against the VA Defendants in their official capacities; and 42 U.S.C. § 1983, criminal, and practicing-medicine-without-a-license claims; and

(3) Plaintiff's FTCA claims against the VA Defendants in their official capacities are DISMISSED with leave to amend.

Plaintiff is GRANTED leave to file, by March 20, 2020, a second amended complaint limited to attempting to assert a cognizable FTCA claim against the United States based on conduct by the VA Defendants in their official capacities, and to reassert her state-law claims against existing Defendants. A second amended complaint may not assert any new claims or claims that were dismissed with prejudice. Failure to file a second amended complaint by March 20, 2020 will result in automatic dismissal of this action without prejudice.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 21, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Wiley v. Vea, et al.*, Civ. No. 19-00195 JMS-WRP, Order Dismissing First Amended Complaint with Leave to Amend